### FRANK GOSS *v.* CITIZENS INSURANCE COMPANY.

Where there are written and printed stipulations in a policy of insurance, the written clause must control, if they are irreconcilable with each other.
Where no cause of action is alleged the case will be dismissed.

APPEAL from the Sixth District Court of New Orleans, *Duplantier*, J. *Durant & Hornor, for plaintiff and appellant.*—Plaintiff insured a lot of corn from New Orleans to Matamoros, by an open policy, to the extent of $4,600, "suject to twenty per centum average," all which is inserted in writing in the policy. After fully setting out his cause of action, and that his total loss had occurred by a peril of the sea, petitioner avers that defendant has refused to pay, alleging that the loss did not happen from stranding or collision.

The defendant pleaded the exception, no cause of action, and after judgment dismissing the suit, the plaintiff has appealed.

The objection to our suit proceeds more from the lower Court than the Insurance Company; and the experiment involved in the exception, puts, if sustained, a peremptory quietus to our claim, and absolves us from the payment of a large amount of cost, incident to the trial of such a case on its merits. If our client is without any valid claim on the Company, this mode of proceeding is very advantageous to him, and saves trouble and expense.

The exception, however, can only be maintained legally, when the facts set forth in the petition, taken as true, cannot be so collocated as to give the plaintiff the right to recover.

The policy of insurance in this case is made part of the petition. The clause we rely on reads as follows :

"This insurance is declared to be on corn, subject to twenty per centum average. Subject to the war clause, to the extent of forty-six hundred dollars." These words are inserted, in writing, at the foot of the printed portion of the policy.

Corn is a memorandum article ; that is, an article excepted from loss. This exception is introduced into the policy under the head "memorandum." See Phillips on Insurance, No. 1756.

"The reason of these exceptions is the great liability of such articles to damage from slight causes, insomuch that it is not easy to discriminate damage by ordinary causes from that resulting from the extraordinary operation of the perils insured against," etc. Ibid, No. 54.

The memorandum in the present policy, so far as corn is concerned, reads : "It is also agreed, that grain of any kind, and all other articles perishable in their own nature are warranted free from any average, unless it happen by stranding or collision, and amount to twenty per cent."

Now, the lower Judge says, in point of fact, that the policy on corn subject to twenty per cent. average, is precisely equivalent to an insurance on corn, free from average unless it happen by stranding or collision, and amount to twenty per cent.

It is difficult to conceive two ideas more inconsistent and contradictory; and yet, here is a learned Judge who pronounces them not only reconcilable but harmonious.

"The one seems to be but a reiteration of a portion of the idea conveyed by the other, whilst it leaves to this latter the task of more minutely expressing the intentions of the contracting parties."

The written controls the printed part of the policy, "inasmuch as the written words are the immediate language and terms selected by the parties themselves for the expression of their meaning."

Our contract then is, that on a loss on corn, over twenty per cent. average, by any peril of the sea, the Company will pay us. It is true that these words "by any peril of the sea," are not written in the policy. But they are there printed. "Touching the adventures and perils which the said Company is consented to bear and take upon itself in this voyage, they are of the seas, fires. etc., etc., and result necessarily from the very essence of a marine policy. The aim and object of an instrument, etc., are essential in construing them."

On the other hand, by the "memorandum," the loss must happen by stranding or collision.

Our contract is universal, covering all the perils of the seas. The contract made for us by the Judge, is particular, covering stranding and collision, and nothing else.

By the latter construction, if correct in law, we are deprived of all our rights against the Company, and then the decision should be affirmed. But if this construction be erroneous, the case must be remanded.

All parts of the policy must have effect given to them. What mean the written words "subject to twenty per cent. average? "Why insert them at all, if it were not to control the effect of the memorandum? If these words had not been inserted, the judgment of the lower Court would have been clearly correct, and the memorandum would control. But the difference is very great between corn under the memorandum clause, and corn subject to twenty per centum average.

In thus reasoning, we give equal effect to both printed and written clauses. But this is more than just; for "if there is any reasonable doubt as to the meaning of the whole (document), the written words are entitled to have greater effect in the interpretation, than those which are printed; they being the immediate language and terms selected by the parties themselves for the expression of their meaning, while the printed formula is more general in its nature, applying equally to their case and to that of all other contracting parties on similar subjects and occasions." 1 Greenleaf Ev., ? 278; Robertson v. French, 4 East. 130.

L. Castera and A. Grima, for defendants:—The contract is one of insurance ; the policy declares it to be on corn, and in the memoranda the following clause is found in printing : "Salt, in bulk, grain of any kind, etc., are warranted free from any average, unless it happen by stranding or collision, and amount to twenty per cent."

Thus, two conditions must concur to bind the underwriters, to-wit: 1. The loss must be the result of stranding or collision; 2. It must be of twenty per cent at least; both of which must be alleged to disclose a sufficient cause of action, and neither of which is found in plaintiff's petition. We contend that any disclosure of facts falling short of those two prerequisites is fatal.

Plaintiff lays considerable stress on the sense supposed to be concealed beneath the words in writing at the bottom of the policy "subject to twenty per cent. average," and insists that they were inserted to modify and control the context. We answer with the Judge below: "It is difficult to come to this conclusion; were these printed, and written expressions in the policy irreconcilable, plaintiff's appreciation of them would be correct, but such is not the case, they appear to be not only reconcilable, but to harmonize perfectly well; the one seems to be but a reiteration of a portion of the idea conveyed by the other," etc.

It will not be denied that the underwriters cannot be made responsible for any loss or damage arising out of a cause which they have specially excepted from the category of risks assumed by them. Vid. Parsons' Maritime law 430. Can it be seriously insisted that the Insurance Company, in this case, meant by the words written at the bottom of the policy to overturn the sense so clearly expressed in the context? With equal plausibility it might be said that the written words, "subject to the war clause," must necessarily have been set down with the intention of controlling some other stipulation in the policy. Plaintiff's quotation of Greenleaf Ev. 278, can only serve him very badly, if he has not made out that the printed and the written words are entirely irreconcilable. Alluding to the written words, he asks at page 4 of his brief: "Why insert them at all, if it were not to control the effect of the memorandum? For convenience, probably, and to bring at once before the eyes and to the understanding the principal features of the agreement between the parties. Any unprejudiced mind will be struck at the collateral position in the policy of the two written clauses, and by their easy assimilation to a recapitulation, a reiteration or a synopsis. This interpretation plaintiff would willingly concede in favor of the war clause: can he, with better grace, declare hostility to the brother clause standing close by?

The following is taken from a treatise of high authority: "It is, however, often said that written words control the printed part of the policy, because printed forms are made for cases generally, but seldom for any especial case, and that the written words determine the intention of the parties as to the meaning of the policy. This is true to a great extent, but the general rule must be that if the whole can be construed together, so that the written words and those printed make an intelligible contract, this construction is to be adopted." 2 Parsons' Maritime Law, pp. 53 and 54. In the case of *Goicochea* v. *Louisiana State Insurance Company*, 18 Martin's R. p. 55, Porter, Judge, said: "The rule that the written parts of the policy should control those that are printed is correct, because the

written words are the immediate language and terms stated by the parties themselves for the expression of their meaning, etc., but the rule cannot properly receive an application in cases other than those where the written and printed words so contradict each other that the one must yield to the other. We suppose the quotation on page 3 of the learned counsels' brief is copied from the opinion just cited ; but we do not wonder at their omission of the latter portion which turns so suddenly against the appellant. Vid also C. C. 1943 and 1950. *Wallace et al* v. *Insurance Company*, 4 La. 290. *Hunter et al* v. *General Mutual Insurance Company, of New York*, 11 La. Ann. 139.

Let us now look into the principles governing the printed memorandum. Its legal effect is to protect the underwriter from all partial losses. Nothing short of a total extinction of memorandum articles would entitle the insured to turn the case into a total loss. In the case of *Biays* v. *Chesapeake Insurance Company*, 7 Cranch, p. 418, the Supreme Court of the United States said : "It is well understood at the present day, with respect to such articles (memorandum articles) that underwriters are free from all partial losses of any kind, which do not arise from a contribution towards a general average." The doctrine of the restriction of the underwriters' liability by the printed memorandum clause, is carried still further. Smith, in his treatise on Mercantile Law, says : "The memorandum is as follows : N. B. Corn, fish, salt, fruit, flower, and seed, are warranted free from average, unless general, or the ship be stranded. Sugar, tobacco, hemp, flax, hides and skins are warranted free from average under five pounds per cent.," and he goes on : "This memorandum protects the underwriter from making good any partial loss whatever upon the class of articles first specified, and any loss under five per cent. on the class secondly specified, unless in either case the loss were incurred in consequence of a general average, or the ship be stranded." Smith's Mercantile Law, p. 448, vide, also 1 Phil. Ins., p. 22 and vol. 2, pp. 467, 468, 2 Arnould Ins. 857. Whenever the printed memorandum clause of stranding or collision is inserted in the policy their allegation seems to be considered by latest authorities as a condition precedent to recovery. The same author previously quoted, says : "It seems now to be settled that the phrase is to be read, as if it ran thus : "goods to be free, etc., unless the ship be stranded," and then this stranding is to be regarded as a condition. 2 Parsons' Maritime Law, p. 267. It is unnecessary for the purposes of this exception to enter into any discussion of the second essential condition to bind the underwriter, to wit : damage to the amount of twenty per cent. at least. Suffice it to state that it being a prerequisite to recovery in the present instance, it is not only reconcilable with the printed memorandum but "harmonizes with it" in the language of the Judge below. Plaintiff's petition lays no claims to indemnity by reason of any loss arising from the either stranding or collision ; the condition precedent, cause of action is therefore wanting. It is respectfully sub-

mitted that the judgment of the inferior Court, sustaining the exception, should be affirmed.

HYMAN, C. J. This suit is on a policy of insurance.

Plaintiff alleged that a certain quantity of corn had been damaged at sea, sixty per cent., caused by violent winds, high seas, and straining of the vessel on which it was shipped; and that defendant had insured against this damage, by the policy of insurance which he made a part of his petition.

He prayed judgment against the company for the amount for which the corn was insured.

Defendant, by exception, asked the Court to dismiss the suit, on the the ground that the allegations of plaintiff's petition disclosed no cause of action.

The Judge sustained the exception and dismissed the suit.

From this judgment, plaintiff has appealed.

The question presented is, can the plaintiff recover on the allegations in his petitions?

In the printed memorandum of the policy, there is this clause: "That the assured warranted that grain of any kind is free from any average, unless it happen by stranding or collision, and amount to twenty per cent."

The part of the policy in writing is, "that this insurance is declared to be on corn, subject to twenty per cent average, subject to the war clause."

The war clause is, that the insurer would not be answerable for any expense, damage or loss, which might occur, in consequence of seizure or detention, for trade in articles contraband of war.

The plaintiff contends, in order to sustain his suit, that the written must control the printed expression in the policy; and we should so rule, did the printed so conflict with the written clauses, as to render them irreconcilable with each other. See 6 New Series, p. 55.

Each stipulation, whether written or printed, should have effect, unless the giving effect to one would destroy another; and then the printed must yield to the written stipulation.

The written part of the policy is not inconsistent with the printed part.

The company, by the clause in the memorandum, proposed to insure grain against damages that might happen from stranding or collision, should the average damage amount to twenty per cent.

This proposition was accepted by the plaintiff, subject to the twenty per cent. average and the war clause.

There was no proposition made or assented to, by either plaintiff or defendant, that insurance on the grain should be for any other peril of the sea than stranding or collision.

The policy, by being annexed to the petition, controls the allegations therein, and sets forth that the insurance was for different causes of damage than for those for which plaintiff seeks to recover.

Judgment affirmed, with costs on plaintiff.